UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| *In re* J. SHELBY SHARPE | § § § | Misc. Action No. 4:24-MC-0007-X |

### SEALED MEMORANDUM OPINION & ORDER

Before Hendrix, Starr, and Means, District Judges:

J. Shelby Sharpe has practiced law for nearly sixty years, serving on various committees and in positions of honor. But recently, his behavior took a different direction. Instead of following Court orders, Sharpe has shown repeated defiance of those orders in different ways.

We ordered the Investigators to determine if Sharpe (1) engaged in conduct unbecoming of a member of the bar, (2) complied with court orders, (3) engaged in unethical behavior, and (4) is able to conduct litigation properly in this Court.

After the Investigation report, briefing, and an evidentiary hearing, the Panel finds it most concerning that Sharpe: (1) filed a court document to defend the Behans after he was suspended from practicing; (2) contended the Behans couldn't provide a gate code because they couldn't vote stock but could authorize state court lawsuits; (3) filed those state court lawsuits to thwart the collection of a federal judgment; (4) claimed to check the email where he receives court filings and legal notices, but missed an important email on the selling of Behan-related property in violation of court orders; and (5) lacked candor when explaining to the Investigators when Sharpe learned about his co-counsel's past as a law clerk for Judge Pittman.

1

This pattern of alarming conduct, especially as it relates to the Behans, makes the Panel conclude that Sharpe (1) engaged in conduct unbecoming of a member of the bar, (2) has failed to comply with multiple orders of Judge Pittman, (3) engaged in unethical behavior, and (4) is unable to conduct litigation involving Dale and Linda Behan and River North properly. The Panel harbors doubt as to whether Sharpe can conduct litigation for other clients properly. But the Panel will undertake such prospective matters as they arise.

Given Sharpe's conduct, the Panel hereby **SANCTIONS** J. Shelby Sharpe. Accordingly, J. Shelby Sharpe:

1. Shall withdraw from any and all litigation in the Northern District of Texas involving Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful relationship to the Behans whatsoever within seven days of this order.

2. Shall not give legal advice to Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful relationship to the Behans in any matter in litigation in the Northern District of Texas.

3. Shall file within seven days of this order sealed copies of this opinion in any appellate litigation involving the Behans or River North, including in Fifth Circuit case numbers:

      a.  No. 22-10495,

      b.  No. 24-10246,

      c.  No. 24-10366,

      d.  No. 24-10460,

      e.  No. 24-10822,

      f.  No. 24-10898,

      g.  No. 24-10998,

      h.  No. 25-10339, and

      i.  No. 25-10353.

4.  Shall not represent or take on any new client in the Northern District of Texas without the express, prior approval of this Panel.  If Sharpe wishes to begin a new representation, he shall file a motion for leave with the Panel and the Panel will determine whether Sharpe is capable of the proposed representation.

## I.  Factual Background

The history of the underlying case is long and arduous, but the story of this disciplinary matter does not need a full recitation of those facts, only those that bear on this disciplinary matter.  The Court gave a more fulsome recitation of the facts in its order of December 18, 2024.[1]

This is a case about an attorney, J. Shelby Sharpe, and his clients of nearly ten years,[2] Dale and Linda Behan.  In the 2010s, the Behans were multimillionaires as a result of selling a company, but now "they're truly living off of friends helping them."[3] As Sharpe put it, "things went south" and litigation related to Weslease 2018

---

[1] Doc. 29.

[2] Doc. 35-1 at 86.

[3] Doc. 35-1 at 104–05.

Operating, LP (Weslease) (the plaintiff in the underlying dispute) "wiped out what [the Behans] at one time did have . . . and put them in the situation they're in now."[4]

In short, Weslease obtained a judgment against Dale and Linda Behan totaling $724,020.30.[5] When the Behans failed to satisfy the judgment, Weslease sought a turnover order from Judge Pittman, seeking to acquire control over all aspects of River North.[6] On March 20, 2024, Judge Pittman entered an order summarily granting Weslease's application for a turnover order and ordering further actions.[7] The application prays that the Court "[o]rder Debtors to turn over all stock, papers, ownership, and *control held in and through River North*."[8]

It is worthwhile to note how the ownership and control structure of River North works. In essence, the Behans—at all times relevant here—were the directors of River North.[9] Amarillo National Bank possesses the stock in River North and has done so since 2014[10] because it executed loan documents that issued debt "secured by these stock certificates."[11] It appears the Bank loaned the Behans money and used the stock as collateral. The debt secured by the stock has not been paid back and has

---

[4] Doc. 35-1 at 104–05.

[5] *Weslease*, Doc. 79. In footnotes "*Weslease*" refers to the docket in *Weslease 2018 Operating, LP v. Innovative Sands Solutions, LLC*, 4:20-cv-0776-P (N.D. Tex.).

[6] *Weslease*, Doc. 111 at 4.

[7] *Weslease*, Doc. 137.

[8] *Weslease*, Doc. 111 at 4 (emphasis added).

[9] *Weslease*, Doc. 151 at 59.

[10] *Weslease*, Doc. 172 at 12.

[11] *Weslease*, Doc. 135-1 at 1.

been reduced to judgment.[12]  Also in 2014, the Behans provided irrevocable proxies to the Bank,[13] seemingly foreclosing the Behans' ability to vote the stock.

Weslease then filed a show cause motion[14] and then supplemented that motion indicating that the Behans had failed to "provide [the] gate code/access to real property located in Hood County" that River North owned.[15]  The Behans resisted providing the gate code because (they argued) they did not control the stock of River North—Amarillo National Bank did.[16]  As a result, to get access to River North property, the Behans contended Weslease needed to go through Amarillo National Bank.

Judge Pittman held a hearing on April 5, 2024, at which Dale Behan eventually provided Weslease with the gate code.[17]  Judge Pittman then entered an order requiring the Behans to "immediately provide gate codes, keys, or anything else necessary for Weslease to access the Brazos Property."[18]  At this hearing, Mr. Trevor Paul, a former law clerk to Judge Pittman, represented the Behans alongside Sharpe. In Sharpe's deposition with the Investigators for this case, Sharpe represented that he "had no clue as to any relationship [Paul] might have had with Judge Pittman."[19]

---

[12] *Weslease*, Doc. 135-1 at 1.

[13] *Weslease*, Doc. 135-1 at 6–7.

[14] *Weslease*, Doc. 144.

[15] *Weslease*, Doc. 148 at 2.

[16] *See Weslease*, Doc. 151 at 57.

[17] *Weslease*, Doc. 151 at 30.

[18] *Weslease*, Doc. 149 at 1.

[19] Doc. 35-1 at 145.

He said: "In fact, I found that out just before the hearing."[20]  But four days before the hearing Sharpe sent an email to counsel for Amarillo National Bank that states: "[O]ne of the lawyers from [Jackson Walker] that will appear with me is a former clerk for Pittman, who will tell him that he has no jurisdiction to rule on the enforcement motion."[21]

Eventually, the Behans—as officers and directors of River North—directed Sharpe to file two lawsuits in Texas state court on behalf of River North: one was a slander of title suit and the other was another civil matter.[22]  For that, Judge Pittman found Sharpe and the Behans in contempt and ordered them to pay $15,000, jointly and severally, to the Clerk of the Court.[23]

Later on, Weslease learned that the Behans had signed a contract to sell real estate on behalf of River North on August 9, 2024—after the Behans and Sharpe were prohibited from exercising control over River North assets.[24]  Sharpe had been listed as a noticed party[25] but represents that he never acquired actual knowledge of the transaction until Dale Behan told him about issues with closing.[26]

---

[20] Doc. 35-1 at 145.

[21] Doc. 35-1 at 12.

[22] *Weslease*, Doc. 162 at 1–2.

[23] *Weslease*, Doc. 172 at 18.

[24] *Weslease*, Doc. 199 at 2.

[25] Doc. 35-1 at 37.

[26] Doc. 36 at 31.

Finally, Judge Pittman temporarily suspended Sharpe's ability to practice before the Northern District of Texas on November 7, 2024.[27]  Nevertheless, on December 13, 2024, after the suspension order, Sharpe filed a response to a motion on behalf of the Behans in Judge Pittman's court.[28]  For that, Judge Pittman sanctioned Sharpe, ordered him to pay $3,000 to the Court registry, and ordered Sharpe to sit for the Multistate Professional Responsibility Exam.[29]

As for *this* proceeding, as opposed to the underlying litigation, Judge Pittman opened this disciplinary matter against Sharpe on May 21, 2024, following a Show Cause hearing.[30]  Judge Pittman later appointed two investigators to assist the Court in its factfinding, Geffrey W. Anderson and Stephen P. Fahey (the Investigators).[31]  Judge Pittman later referred Sharpe's motion to refer to a panel to Chief Judge Godbey and referred to the panel the motion for a more definite statement.[32]  Judge Pittman then temporarily suspended Sharpe from practicing in the Northern District of Texas.[33]  The following day, Chief Judge Godbey convened this Panel to "issue such determination as it sees fit"[34] as to any discipline that the Panel should levy against

---

[27] Doc. 17.

[28] *Weslease*, Doc. 276.

[29] *Weslease*, Doc. 291 at 3.

[30] *Weslease*, Docs. 165, 166.

[31] Docs. 5, 9.

[32] Doc. 16.  The motion for a more definite statement simply requests that the Court require the Investigators to file a report and for that report to include "the particulars of the charges lodged against Respondent."  Doc. 13 at 2. The Panel in effect granted this request when it required the Investigators to file their Report.  Doc. 24.

[33] Doc. 17.

[34] Doc. 18.

Sharpe. Days later, Sharpe filed a motion to lift the temporary suspension,[35] which the Panel ultimately denied.[36] The Panel enlisted the Investigators to examine "whether Sharpe: (1) engaged in conduct unbecoming of a member of the bar, (2) has failed to comply with any rule or order of Judge Pittman, (3) engaged in unethical behavior, or (4) is unable to conduct litigation properly."[37]

The Investigators filed their Report and Sharpe timely responded. Three days before the filing of the Report, the Investigators and Sharpe sought to dismiss the proceedings on the grounds that (1) Sharpe had retired from practicing in the Northern District of Texas, (2) would not seek readmission to the Northern District of Texas, and (3) would retire from practicing law altogether before the end of the year.[38] The Panel denied the motion on the grounds that the Panel did not know what would come of Sharpe's appeals to the United States Court of Appeals for the Fifth Circuit, whether Sharpe would file state court actions to hinder federal judgments, and whether his "retirement" would *actually* mean Sharpe would cease practicing, given that he filed a document in Judge Pittman's court while being temporarily suspended.[39]

---

[35] Doc. 19.

[36] Doc. 29.

[37] Doc. 24.

[38] Doc. 33-1 at 1.

[39] Doc. 34 at 2–3.

8

Throughout all of this, Sharpe has also been busy in front of the United States Court of Appeals for the Fifth Circuit. The underlying litigation has spawned nine numbered appeals, some of which have been consolidated. Those are:

1. No. 22-10495
   o The appeal of the final judgment in the underlying case which the Fifth Circuit affirmed.
2. No. 24-10246
   o The appeal of the first turnover order from Judge Pittman. Notably, the Fifth Circuit denied the motion for a stay pending appeal.[40] A part of that appeal is Judge Pittman's order granting the motion for enforcement of the turnover order and to show cause. The Fifth Circuit denied a stay pending appeal for this order as well.[41]
3. No. 24-10366
   o This appeal is consolidated with No. 24-10246. This appeals one of Judge Pittman's orders granting enforcement of the turnover order and requires the Behans to provide the gate code to a River North Farms ranch.[42]
4. No. 24-10460
   o This appeals Judge Pittman's order granting the second motion for enforcement of the turnover order.
5. No. 24-10822
   o This is an appeal from an order granting another motion to enforce the turnover order.
6. No. 24-10898
   o This appeals the orders at Docs. 229 (striking and unfiling document due to not seeking leave), 193 (denying motion for leave to file sur-reply), 191 (striking and unfiling sur-reply due to not seeking leave), 179 (granting motion for clarification, to show cause, and for an extension of time), 167 (granting enforcement of turnover order and show cause), and 158 (ordering the Behans to file a response and setting a show cause hearing).
7. No. 24-10998
   o This appeals Judge Pittman's orders granting the motion to disgorge $100,000 and denying reconsideration of that motion.[43]

---

[40] *Weslease*, Doc. 143.

[41] *Weslease*, Doc. 176.

[42] For more on the gate code, see *infra* Part III.B.ii.

[43] *Weslease*, Doc. 254 at 1.

The Fifth Circuit denied a motion to stay pending appeal in this appeal.[44]

8. No. 25-10339
   o This appeals Doc. 295, which grants the receiver's motion to sell land, authorizes judicial foreclosure of certain liens, to distribute sales proceeds, and other relief.

9. No. 25-10353
   o This appeals Doc. 320, which is an amended order granting the receiver's motion to sell land, authorizes judicial foreclosure of certain liens, to distribute sales proceeds, and other associated relief.

In sum, Judge Pittman previously sanctioned Sharpe on several occasions. Judge Pittman sanctioned Sharpe on May 21, 2024, ordering Sharpe and the Behans to jointly and severally pay $15,000 to the Clerk of the Court for issues relating to avoiding Judge Pittman's turnover orders.[45] Judge Pittman also sanctioned Sharpe on December 19, 2024, ordering him to pay $3,000 and to sit for the Multistate Professional Responsibility Exam, for filing while suspended.[46]

## II. Legal Standard

"[A]ttorney discipline proceedings require proof only by clear and convincing evidence."[47] "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."[48]

---

[44] *Weslease*, Doc. 270.

[45] *Weslease*, Doc. 172 at 18.

[46] *Weslease*, Doc. 291 at 3.

[47] *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000).

[48] *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (cleaned up). On appeal, any order from the panel would be reviewed for abuse of discretion. *In re Finn*, 78 F.4th 153, 156 (5th Cir. 2023).

"Sanctions must be chosen to employ the least possible power to the end proposed.  In other words, the sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior."[49]  "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors."[50]

### III.  Analysis

The Panel first discusses its determination that Sharpe is not a credible witness.  Then, the Panel turns to discussing his conduct.

### A.  Sharpe's Credibility

The Panel **FINDS** that Sharpe is not credible.  His statements are inconsistent.  To begin, as discussed in more detail below, Sharpe made a false statement during his deposition with the Panel's Investigators, stating he only knew his co-counsel was a former law clerk to Judge Pittman "just before" a hearing, when, in fact, he knew four days before the hearing.[51]  Regarding his emails, he claims to have a single email address that he checks every single day, but somehow missed any communication about the real estate transaction, including when he was copied on an email about the transaction on August 12, 2024.[52]  On filing while suspended, Sharpe claims he read the entire order suspending him but somehow came to the

---

[49] *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002) (internal quotation marks and citations omitted).

[50] *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999).

[51] *See infra* p. Part III.B.iv.

[52] Hr'g Tr. at 87, Mar. 14, 2025.

conclusion that it allowed him to file in the underlying litigation anyway.[53]  Even Sharpe's own attorney characterizes that mistake as "dumb,"[54] "stupid,"[55] and a "blunder."[56]  In short, Sharpe's testimony cannot receive credibility given its inconsistencies—not only with itself but with common sense.

## B. Sharpe's Sanctionable Conduct

After an evidentiary hearing, the Panel finds four incidents warrant sanctions. Those are: (1) filing while suspended, (2) filing the state court actions in clear contravention of Judge Pittman's order, (3) Sharpe's involvement in the sale of the Azle property, and (4) the lack of candor regarding Judge Pittman's former law clerk.

### i. Filing While Suspended

Sharpe filed a brief after Judge Pittman temporarily suspended him from practicing in the Northern District of Texas.  Sharpe argues his "meaningless stupidity" was not made in bad faith but was an innocent mistake.[57]  But Sharpe's story can't be squared with the plain meaning of the suspension.

Judge Pittman's order of temporary suspension reads, "Mr. Sharpe remains active in the case that gave rise to this miscellaneous action, as well as on other cases in this district."[58]  Sharpe states he understood this to mean that he was suspended from "being involved in any future case pending the outcome of the disciplinary

---

[53] Tr. at 81, 84.

[54] Tr. at 66 ("And what happened to that dumb pleading?").

[55] *See* Tr. at 121 (noting that Sharpe had "stupidly" violated the temporary suspension).

[56] Doc. 36 at 20.

[57] Doc. 36 at 33.

[58] Doc. 17 at 2.

matter against me."[59]  The very next sentence of Judge Pittman's order makes the function of the order abundantly clear: "In an abundance of caution—because the Court wishes to avoid any further violations, criminal or otherwise—the Court finds it prudent to temporarily suspend Mr. Sharpe from practicing in the Northern District of Texas pending the resolution of this disciplinary matter against him."[60] The final sentence is even clearer: "Meanwhile, however, Mr. Sharpe is obligated to notify all of his clients who have cases pending in the Northern District of Texas, and opposing counsel and co-counsel in each of those cases, of the contents of this Order."[61]

Sharpe admits that this incident "was a blunder."[62]  Sharpe filing while suspended is a clear instance of misconduct.  No reasonable reading of the order would have allowed Sharpe to continue to file in the *Weslease* litigation.  But instead of asking for clarification or leave, which he admits he did in a case before Judge Pittman,[63] he went ahead and filed while suspended anyway.  So why would Sharpe file while suspended?  He says: "[B]ecause I was trying to help the Court get it right. I was not trying to be – I was just disappointed."[64]  Disappointment, whether in a presiding judge's ruling or otherwise, is an insufficient reason to violate a court's clear order.  In the end, Sharpe just wanted to file and was willing to jump through whatever mental gymnastics necessary to reach that end.

---

[59] Doc. 28 at 8.

[60] Doc. 17 at 2.

[61] Doc. 17 at 2.

[62] Doc. 36 at 33.

[63] Tr. at 86.

[64] Tr. at 85.

### ii. State Court Actions

Sharpe filed two state court actions in the course of the judgment collection process. The Investigators address the state court actions because they demonstrate a glaring inconsistency in Sharpe's litigation positions.[65] On one hand, Sharpe argued that the Behans could not do so much as provide Weslease a gate code to River North property without the permission of Amarillo National Bank. On the other, he filed actions in state court without authorization from Amarillo National Bank.

Specifically, Sharpe filed two lawsuits, one in Tarrant County District Court for slander of title on May 10, 2024 and one in the Parker County District Court for a civil matter on May 13, 2024.[66] In defending the filing of the lawsuits, Sharpe contended that the lawsuits were not brought in the name of Dale or Linda Behan, but rather River North Farms, Inc.[67] Sharpe further argued that they did not violate any turnover order because neither Dale nor Linda Behan is a party to the state court suits.[68] On this point, Sharpe admitted before Judge Pittman that Dale and Linda Behan authorized the filing of the lawsuits.[69]

Because the Behans directed the filing of the lawsuits on behalf of River North, Sharpe is left in a precarious position. On the one hand, he previously argued that the Behans lacked authority to do as much as provide Weslease with the gate code to

---

[65] *See* Doc. 35 at 22.

[66] *Weslease*, Doc. 162 at 1–2.

[67] *Weslease*, Doc. 163 at 2.

[68] *Weslease*, Doc. 163 at 3.

[69] *Weslease*, Doc. 172 at 14.

14

a ranch, but then shortly thereafter, believed that the Behans retained control over River North such that they could authorize lawsuits in the corporation's name. Sharpe's starkly inconsistent positions demonstrate that whatever Sharpe wants the law to be at one instant is a self-indulgent mirage. Then, the next moment, Sharpe whipsaws the Court and the parties with a new position. Sharpe took a subsequent, inconsistent position to undermine the Court's orders.

Of course, twisting the law into a pretzel delays the final resolution of the case—which appears to be exactly what the Behans and Sharpe are after. Such twisting does not serve the Court, the parties, or the law. To treat the law so flippantly—arguing it is one thing one day and another the next—betrays Sharpe's professional obligations as an officer of the Court.

Additionally, filing the state court actions contravened one of Judge Pittman's orders. On March 20, 2024, Judge Pittman entered an order summarily granting Weslease's application for a turnover order and ordering further actions.[70] The application prays that the Court "[o]rder Debtors to turn over all stock, papers, ownership, and control held in and through River North."[71] Filing the actions in the name of River North, when authorized by Dale and Linda Behan, is an exercise of control over River North—directly contrary to Judge Pittman's order on the matter.

This begs the question as to why Sharpe would facilitate the Behans' violation of Judge Pittman's order. Well, he represented that he did so in order to "protect the

---

[70] *Weslease*, Doc. 137.

[71] *Weslease*, Doc. 111 at 4.

Behans."[72]  That's a terrible reason.  Here's why: lawyers have dual obligations—one to their clients and one to the Court.  When the two conflict, the attorney's superior obligation is to be honest with the Court and to abide by its orders.  But that's not what happened here.  Instead of abiding by Judge Pittman's order, Sharpe chose to place the Behans above his duty to the Court.  Sharpe, an attorney with more than a half-century of experience, allowed the Behans to exert such tremendous influence over him such that he forfeited his obligations to the Court in order to, as he put it, "protect the Behans."[73]

### iii.  The Sale of the Azle Property

This is the real property transaction that the Panel relied on in the denial of the reconsideration of the temporary suspension.  The Investigators point to three significant pieces of information: (1) Sharpe was listed as a notice party in the sale agreement, (2) the Behans told the buyer that on June 28, 2024 that they wanted their lawyer to review the contract, and (3) Sharpe was copied on an email about the transaction.[74]  The Investigators argue that Sharpe's actions violate Texas Disciplinary Rule of Professional Conduct 4.01(b), which prohibits an attorney from knowingly failing to "disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client."

---

[72] Doc. 36 at 30.

[73] Doc. 36 at 30.

[74] Doc. 35 at 21.

Sharpe's argued in his response to the Investigator's Report that he did not know of the sale until the Behans had difficulty closing the sale. At the evidentiary hearing Sharpe admitted to possessing only one email address that he checks every single day.[75] That very email address is the one listed on the notice sheet for the real estate transaction.[76] And he was copied on an August 12, 2024 email about the transaction.[77] Also, his one email account is the email account where he gets e-filing notices in his cases with this Court.

We find that Sharpe not only knew of the closing but worked on it.[78] In the Weslease litigation, Sharpe penned a declaration stating that:

> When I learned from Dale Behan that the title company was not going to close on the sale of the remaining Azle property because of a quit claim deed that Weslease had filed, I contacted Weslease's counsel with a demand to withdraw the deed because of the cloud of title it placed . . . on the River North Farms contract of sale.[79]

So, Sharpe admitted he was the one who reached out to Weslease to seek a release,[80] indicating he was working up the real estate transaction on the Behans' behalf. Putting all this together, Sharpe perpetuated the fraud. If he had stepped in and let the buyer know sooner that the property couldn't be sold because of the turnover

---

[75] Tr. at 87.

[76] Doc. 35-1 at 37.

[77] Doc. 35-1 at 20. There is no doubt that Sharpe did not disclose that the Behans could not sell the property until after the buyers paid a nonrefundable deposit.

[78] The nonrefundable money was ultimately returned. Doc. 35-1 at 177.

[79] *Weslease*, Doc. 200-1 at 2.

[80] *Weslease*, Doc. 200 at 2.

17

order, then the innocent third party would not have expended costs in working up the real estate transaction.

Compounding this sanctionable conduct is the fact that Sharpe misled the Investigators and this Panel about this topic. Again, Sharpe's statement to the Court is that he did not learn of the transaction until "there was a problem with the closing."[81] The Investigators asked Sharpe: "[D]id you assist [Mr. Behan] in any way with that transaction?"[82] Sharpe responded: "With the closing, no."[83] This directly contradicts Sharpe's declaration, admitting he asked Weslease to withdraw its quit claim deed so the deal could close.[84]

### iv. Lack of Candor

Texas Disciplinary Rule of Professional Conduct 3.03(a)(1) prohibits an attorney from knowingly "mak[ing] a false statement of material fact or law to a tribunal." Judge Pittman asked Sharpe if an attorney from Jackson Walker, Trevor Paul, had been placed on the case to influence Judge Pittman because Paul had been a clerk for Judge Pittman.[85] Sharpe said in his deposition with the Investigators that he did not know that Paul had any connection with Judge Pittman until "just before the hearing."[86] Four days before the hearing, Sharpe sent an email to Amarillo

---

[81] Doc. 35-1 at 58.

[82] Doc. 35-1 at 61.

[83] Doc. 35-1 at 61.

[84] *Weslease*, Doc. 200-1 at 2.

[85] Doc. 35 at 17. It should be noted that the Panel cannot find the statement in the transcript and the Investigators' citation lacks a page number or line number.

[86] Doc. 35-1 at 145.

National Bank noting that Paul had been a clerk for Judge Pittman.[87]  Sharpe responded to the Report asserting that this statement is not material, because "Judge Pittman ruled against Mr. Sharpe on every point."[88]

The Panel disagrees with Sharpe on materiality.  The Panel is looking to Sharpe's statement to the Investigators—not Judge Pittman—that he only found out about Mr. Paul just before the hearing.  As to this proceeding, the statement is material because the Panel is trying to determine if Sharpe has undertaken conduct unbecoming of a member of the bar.  Lying in a Court-appointed deposition is material.  Lying to cover up a potential lie is also material.[89]  And Sharpe's statement is false.  Sharpe's email indicated he knew four days before the hearing (not "just before the hearing") about Mr. Paul's relationship.  Therefore, Sharpe's deposition statement about when he learned of Paul's connection to Judge Pittman is a materially false statement.

### v.  Representation of the Behans and Other Clients

The above facts amount to clear and convincing evidence that Sharpe (1) engaged in conduct unbecoming of a member of the bar, (2) has failed to comply multiple orders of Judge Pittman, (3) engaged in unethical behavior, and (4) is unable to conduct litigation involving Dale and Linda Behan and River North properly.  As

---

[87] Doc. 35-1 at 12.

[88] Doc. 36 at 29.

[89] *See Cohn v. Comm'n for Law. Discipline*, 979 S.W.2d 694, 698 (Tex. App.—Houston [14th Dist.] 1998) ("materiality encompasses matters represented to a tribunal that the judge would attach importance to and would be induced to act on in making a ruling.  This includes rulings that might delay or impair the proceedings, or increase the costs of litigation.").

a result, the Court concludes Sharpe cannot effectively represent the Behans or River North in this Court. Their longstanding relationship and the debt-ridden position the Behans are in have made Sharpe engage in an increasingly alarming pattern of unethical, sanctionable conduct to protect his clients. This new pattern is remarkably at odds with his professional conduct over the course of his career.

The subset of this evidence about Sharpe's inability to effectively monitor his email where Court filings go also concerns the Panel about Sharpe's ability to effectively represent other clients in this Court. As ordered below, the Panel concludes the least-restrictive means nature of sanctions requires the Panel to sideline Sharpe from representing the Behans or River North but to assess whether Sharpe can represent other clients in the future on a case-by-case basis.

### IV. Sharpe's Sanction

Sharpe's actions warrant the following **SANCTIONS**. Sharpe:

1. Shall withdraw from any and all litigation in the Northern District of Texas involving Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful relationship to the Behans whatsoever within seven days of this order.

2. Shall not give legal advice to Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful

20

relationship to the Behans in any matter in litigation in the Northern District of Texas.

3. Shall file within seven days of this order sealed copies of this opinion in any appellate litigation involving the Behans or River North, including in Fifth Circuit case numbers:

      a.  No. 22-10495,
      b.  No. 24-10246,
      c.  No. 24-10366,
      d.  No. 24-10460,
      e.  No. 24-10822,
      f.  No. 24-10898,
      g.  No. 24-10998,
      h.  No. 25-10339, and
      i.  No. 25-10353.

4. Shall not represent or take on any new client in the Northern District of Texas without the express, prior approval of this Panel. If Sharpe wishes to begin a new representation, he shall file a motion for leave with the Panel and the Panel will determine whether Sharpe is capable of the proposed representation.

This sanction is "the least restrictive sanction necessary to deter the inappropriate behavior."[90]

The Panel sets this sanction with a couple of important facts in mind. First, monetary sanctions have not proven effective. Judge Pittman already levied monetary sanctions against Sharpe, after which Sharpe filed while suspended.[91] The

---

[90] *In re First City Bancorporation of Texas Inc.*, 282 F.3d 864, 867 (5th Cir. 2002).

[91] *Weslease*, Doc. 172 at 18.

Panel is not confident that a monetary sanction would do much good—Sharpe reports he was, as recently as December 2024, in dire straits financially[92] and fining him further could mean Sharpe would have to extend his legal practice. That brings us to our second point: Sharpe reports he has been trying for *years* to wind up his legal practice.[93] And he informs the Panel that he "will retire before the end of the year from the practice of law."[94]

Therefore, because monetary sanctions would be ineffective (or could even prolong the issue), the Panel believes some oversight of Sharpe as he wraps up his law practice is a minimally restrictive sanction that will deter the inappropriate behavior—especially in light of the fact Sharpe tells us that he does not plan on taking on new clients.[95] The Panel believes it possesses a duty to ensure that as Sharpe wraps up his law practice, he does not find himself entangled with more difficult clients that cause him to violate court orders.

Lastly, and very importantly, the Panel wishes to make abundantly clear what it means when it says Sharpe may not give legal advice in litigation involving the Behans in the Northern District of Texas. The Panel has learned Sharpe has practiced law (again) in the Northern District of Texas since his suspension. Sharpe's recent declaration admits as much when he states that he told Dale Behan of "some

---

[92] Doc. 36 at 20.

[93] Tr. at 69.

[94] Doc. 33-1 at 1. The Panel considers this a mitigating factor, as his impending retirement dampens the likelihood of recurrence.

[95] Tr. at 69.

places to look for the response he was planning on filing."[96]  Sharpe goes on to state that "[t]his referral was solely related to my role as appellate counsel so it would be a part of the appellate record if an appeal became appropriate."[97]

Sharpe's view is incorrect.  Developing the district court record when there might be a future appeal is practicing law in the district court.  As such, Sharpe continued to practice in the Northern District of Texas while suspended.  At this point, Sharpe has shown no regard for either Judge Pittman's orders or now the order of this Panel upholding his temporary suspension.  The Panel warns Sharpe that if he continues to defy orders from this Panel and Judge Pittman, the Panel may disbar him from the Northern District of Texas or take other serious measures.

## V.  Conclusion

Based on the evidentiary hearing, the briefing, and the investigation, the Panel **SANCTIONS** J. Shelby Sharpe in the manner identified in this order.

**IT IS SO ORDERED.**

Signed this 3rd of June, 2025, for the Panel by:

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[96] Doc. 53-1 at 6.

[97] Doc. 53-1 at 6.

23