UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**WESLEASE 2018 OPERATING, LP,**

   Plaintiff,

v.                                                          No. 4:20-cv-00776-P

**INNOVATIVE SAND SOLUTIONS, LLC, ET AL.,**

   Defendants.

## OPINION & ORDER

Before the Court is J. Robert Forshey's (Receiver) Motion for Order to Show Cause Against Attorney J. Shelby Sharpe. ECF No. 459. Among the sanctions proposed in Receiver's Motion is that the Court permanently suspend Sharpe from practice before this Court. Receiver also asks to be compensated for expenses incurred in responding to Sharpe's recent motion for stay pending appeal as well as the pursuit of this Motion. Having considered the Motion, applicable law, and relevant docket entries, the Court will **GRANT** the Motion **in part**.

This case spans more than five years and contains nearly 500 docket entries, a related disciplinary case, and a dozen different appeals.[1] The Court cannot give a full account of the Weslease saga. Nonetheless, the Court will provide, though it may not seem like it, a brief history of Sharpe's dealings in this case on behalf of his clients, Dale and Linda Behan, and the related disciplinary action before the three-judge panel (Panel). This history will provide context to the sanctions assessed by the Panel against Sharpe, and more importantly, the decision by the Court today in assessing the least restrictive sanction to ensure

---

[1] Of the twelve appeals to the Fifth Circuit filed by Sharpe, ten have been resolved unfavorably for his clients, the Behans, and two remain unresolved. *See* Case Nos. 24-10460 (consol. with 24-10246), 24-10822 (consol. with 10246), 24-10898 (consol. with 24-10246), 24-10998, 25-10283, 25-10339, 25-10353, 25-10682, 25-10905.

compliance with the rules: **an indefinite suspension from the practice of law before this Court**.

## BACKGROUND

This case began in 2020 when Weslease 2018 Operating LP (Weslease) acquired the right to collect a $200,000 debt owed by Innovative Sand Solutions, LLC (Innovative Sand). ECF No. 4 at 12. After finding that Innovative Sand was created with the intent to hinder the payment of the $200,000, the undersigned entered judgment against both Innovative Sand and Dale and Linda Behan. ECF No. 78 at 4. Multiple turnover orders were subsequently entered in an attempt to satisfy this judgment. ECF Nos. 137, 139, 467, 208. Those turnover orders included an order that the Behans turn over stock in a separate entity, River North Farms (River North). ECF No. 139 at 1.

Notwithstanding the undersigned's order concerning River North, the Behans refused to grant Weslease access to assets of River North, specifically, a piece of property on the Brazos River (Brazos Property). *See* ECF No. 144 at 1. The Behans' attorney, Sharpe, replied to emails from Weslease indicating that the Court's order did not effectively turn over any access because Amarillo National Bank, not the Behans, owned the Brazos Property. *Id.* at 144-2 at 1. The Court only learned of the Behans' and Sharpe's resistance through a motion to show cause filed by Weslease. *See id.* The Court then held the first of what would become many show cause hearings. ECF No. 150. The Behans were ordered to turn over financial information for all entities in which they had an interest dating back to 2017. ECF No. 149. The Court further ordered the Behans to "fully comply with all provisions of [the undersigned's] prior Turnover Order." *Id.*

After the show cause hearing, the Court learned that Sharpe filed two state court lawsuits on behalf of River North, one in Tarrant County and the other in Parker County. ECF No. 162 at 1–2. Sharpe asserted that, because River North was no longer owned by the Behans, and the Court's turnover order did not require *Sharpe* to do anything, Sharpe did not violate the Court's orders. ECF No. 163 at 2.

At this point, the Court entered two orders. The first opened a

2

miscellaneous disciplinary matter against Sharpe, Case No. 4:24-mc-00007-X (*In re Sharpe*). ECF No. 166. The second required Sharpe to hand over all documents relating to his representation of River North and dismiss all petitions filed on behalf of River North after the Court's turnover order. ECF No. 167. Sharpe and the Behans were also held in contempt and fined. ECF No. 172 at 18. When Sharpe and the Behans failed to pay their fines on time, the Court set another show cause hearing but canceled the hearing once the fines were paid. ECF Nos. 181, 182.

Two weeks later, Weslease filed another motion for enforcement of the Court's turnover order alleging that the Behans deposited two checks payable to River North on June 5 and June 6, 2024. ECF No. 183. In response, Sharpe argued, "Weslease, if it finally determined by the Fifth Circuit to be the Owner of River Nort [sic] Farms, will be the sole beneficiary of the payment of the debts." ECF No. 184 at 2. The same day as this response, Weslease filed another motion for an execution order, this time claiming that Sharpe had received $228,000 from River North and loaned—without the Behans' knowledge—$100,000 to Haynes & Boone law firm for money owed to the law firm in another case. ECF No. 185 at 2.[2] Sharpe's later explanation to the Panel was that, even though the Behans subsequently repaid Sharpe $100,000 for this transaction, the $100,000 "loan" to Haynes & Boone was not intended to be loan, and the Behans only "learned of the attorney's fee payment" afterward and insisted on repaying Sharpe themselves. *In re Sharpe*, ECF No. 29 at 10–11.

Sharpe's antics did not end there. Two months later, on August 9, 2024, Sharpe informed Weslease that the Behans signed a sale of real estate on behalf of River North, despite this Court's repeated orders that

---

[2]On June 27, 2025, as the successor-in-interest to the Behans' estate, the Receiver filed a report in this case outlining various potential claims that might be brought against Sharpe for this loan including: (1) fraudulent transfer under TUFTA; (2) aiding and abetting breaches of fiduciary duties by the Behans to River North; (3) breach of fiduciary duties owed to River North by Sharpe and his law firm; and (4) disgorgement by Sharpe and his law firm. ECF No. 407 at 6.

3

the Behans refrain from exercising control over River North or its assets. ECF No. 199 at 2.[3] Weslease argued that the Behans and Sharpe induced a third party into "putting down a non-refundable deposit." *Id.* Regarding this transaction and Sharpe's explanation to the Panel in his disciplinary proceeding, the Panel stated the following: "what went unsaid speaks volumes: Sharpe never refuted the fact that he facilitated the real estate transaction." *In re Sharpe*, ECF No. 29 at 14.

These events provide context for the decision by the undersigned to open a disciplinary proceeding against Sharpe and the eventual order by the Panel to sanction Sharpe. Sharpe had become a drain on the Court's resources in the Weslease case. Sanctions and even civil contempt did not stop him from thwarting or attempting to thwart the Court's enforcement orders at every step. Consequently, *In re Sharpe* was opened on May 21, 2024. *See In re Sharpe*, ECF No. 1. The undersigned appointed special assistant counsel Geffrey W. Anderson and Stephen P. Fahey—both of whom worked without pay on the matter—to aid in the Court's investigation of Sharpe. *Id.*, ECF Nos. 5, 9. Several months later, on November 7, 2024, and after hearing Sharpe's responses regarding the $100,000 loan, the undersigned temporarily suspended Sharpe pending resolution of the disciplinary matter against him. *Id.* ECF No. 17. The undersigned also referred a motion by Sharpe for a three-judge panel to be appointed over the disciplinary case to Chief Judge David Godbey. ECF No. 16.

Two days later, on November 8, 2024, Chief Judge Godbey appointed the Panel, comprised of the honorable Judges Brantley Starr, Terry Means, and Wes Hendrix. *Id.* ECF No. 18. The next month, on December 18, 2024, the Panel denied Sharpe's motion to lift the undersigned's temporary suspension. *Id.* ECF No. 29. The Panel's order did not deter

---

[3]Sharpe argued that the property was not subject to the Court's order because, in a separate and earlier-filed case before Judge O'Connor, Judge O'Connor came to a different conclusion regarding River North than Judge Pittman in the later Weslease case. As this Court has reiterated time and again, Judge O'Connor's ruling did not collaterally estop the undersigned's order regarding River North—new facts and circumstances arose throughout the Weslease litigation that made River North subject to the turnover order in this case.

4

Sharpe either. While temporarily suspended Sharpe helped prepare a response on behalf of the Behans in this case; as the Panel found in its Memorandum Opinion & Order (Panel's Sanctions Order) six months later, on June 3, 2025, Sharpe "practiced law (again) in the Northern District of Texas since his suspension." *Id.* ECF No. 54 at 22. The Panel concluded that, while temporarily suspended, Sharpe advised Dale Behan on filings in the Weslease case. *Id.* Sharpe argued this advice was solely related to his role as "appellate counsel" for appeals on the Weslease orders. The Panel disagreed:

> Sharpe's view is incorrect. Developing the district court record when there might be a future appeal is practicing law in the district court. As such, Sharpe continued to practice in the Northern District of Texas while suspended. At this point, Sharpe has shown no regard for either Judge Pittman's orders or now the order of this Panel upholding his temporary suspension. The Panel warns Sharpe that if he continues to defy orders from this Panel and Judge Pittman, the Panel may disbar him from the Northern District of Texas or take other serious measures.

*Id.* at 23.

The Panel's Sanctions Order assessed final sanctions against Sharpe. *Id.* ECF No. 54. Those sanctions included the following:

(1) [Sharpe] [s]hall withdraw from any and all litigation in the Northern District of Texas involving Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful relationship to the Behans whatsoever within seven days of this order;

(2) [Sharpe] [s]hall not give legal advice to Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any

5

> meaningful relationship to the Behans in any matter in litigation in the Northern District of Texas;
>
> (3) [Sharpe] [s]hall file within seven days of this order sealed copies of this opinion in any appellate litigation involving the Behans or River North, including in Fifth Circuit case numbers: No. 22-10495, No. 24-10246, No. 24-10366, No. 24-10460, No. 24-10822, No. 24-10898, No. 24-10998, No. 25-10339, and No. 25-10353; and
>
> (4) [Sharpe] [s]hall not represent or take on any new client in the Northern District of Texas without the express, prior approval of this Panel. If Sharpe wishes to begin a new representation, he shall file a motion for leave with the Panel and the Panel will determine whether Sharpe is capable of the proposed representation.

*Id.* at 20–21. On June 30, 2025, the Panel denied Sharpe's motion for reconsideration of the Panel's Sanctions Order. *Id.* ECF No. 61.

A little over two months after the Panel's Sanctions Order, we arrive at the current allegations against Sharpe. Receiver filed this Motion for Sharpe to show cause on August 11, 2025. ECF No. 459. The Motion attaches an Emergency Motion for Stay Pending Appeal (Stay Motion) filed by Sharpe on August 8, 2025, in the United States Court of Appeals for the Fifth Circuit. *Id.* Ex. 1. Sharpe's Stay Motion asks the Fifth Circuit to stay this Court's order (ECF No. 438) authorizing the Receiver to sell a 100-acre lot in Arkansas (Arkansas Property) that the Court determined to be owned by the Behans through an entity called Hermitage Newark and therefore subject to the receivership. *See id.* Receiver argues in his Motion that Sharpe's Stay Motion should have been filed in this Court under Federal Rule of Appellate Procedure 8(a). FED. R. APP. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal.").

Receiver's Motion alleges three separate ethical violations stemming from Sharpe's Stay Motion, two of which relate to the Panel's Sanctions

6

Order, and the third relating to the Texas Disciplinary Rules of Professional Conduct. *See* ECF No. 459. Receiver asks the Court to sanction Sharpe for the expenses incurred by Receiver in responding to the Stay Motion as well as his pursuit of this Motion. *Id.* at 6. Receiver also asks the Court to permanently suspend Sharpe from practicing in the Northern District of Texas. *Id.*

After issuing an order and setting a hearing for Sharpe to show cause for the allegations found in Receiver's Motion, and out of an abundance of caution, the Court issued a Notice and Request for Clarification on the Panel's docket for guidance on whether the Panel or the undersigned had jurisdiction over the matter.[4] ECF No. 463. The Panel issued an opinion the following day stating, "the most appropriate path forward" is for the undersigned "to have full jurisdiction over the allegations in the motion to show cause*." In re Sharpe*, ECF No. 63 at 1.

In a motion to continue the hearing, Sharpe indicated that his Panel counsel, Marshall Searcy Jr., was his counsel for this matter.[5] ECF No. 464. Sharpe requested that the hearing be pushed back one week until August 21, 2025. *Id.* This extension was not possible for the Court given its docket and other obligations. Thus, while the Court denied the motion for continuance, it offered Sharpe three options for hearing dates, and accepted Sharpe's choice to move the hearing to August 15, 2025. *See* ECF Nos. 467, 469. Despite never formally making an appearance, Sharpe's Panel counsel, Mr. Searcy, filed an unopposed motion to withdraw or clarify representation. ECF No. 471. The Court granted Mr. Searcy's withdrawal. ECF No. 472. Sharpe's hearing to

---

[4]In the Panel's order denying Sharpe's motion for reconsideration of the Sanctions Order, the Panel stated the following concerning future sanctionable conduct by Sharpe: "Lastly, the Panel wishes to convey that any further sanctionable conduct, except compliance with the Panel's sanction order, is outside the jurisdiction of the Panel. Therefore, any additional sanctionable conduct Sharpe undertakes is most properly handled in the first instance with the related district court." ECF No. 61 at 4.

[5]Upon reviewing Sharpe's response, the Court noted that Sharpe wrote and signed the response in his own name and informed Sharpe that he was not entitled to dual representation. *See* ECF No. 469.

show cause was held on August 15, 2025. The Court now addresses the Receiver's Motion.

## LEGAL STANDARD

"District courts have authority to discipline attorneys pursuant to their local rules."[6] *In re Finn*, 78 F.4th 153, 156 (5th Cir. 2023). Local

---

[6] Over 400 hundred years ago, Sir Francis Bacon admonished trial judges to be on guard to prevent lawyers from engaging in "nimble and sinister tricks and shifts, whereby they pervert the plain and direct courses of courts, and bring justice into oblique lines and labyrinths." Sir Francis Bacon, *Essay "Of Judicature," in* HANDBOOK FOR JUDGES 25, 28 (American Judicature Society ed. 1961).

Likewise, Arch Cantrall famously lectured new judges in 1959:

> The judge sets the standard of practice in his court. He can countenance a low standard of lawyer conduct generally or he can require a high standard of lawyer conduct. Whichever standard prevails in his court will be the standard of practice and conduct of his lawyers outside his court and in their offices.
>
> Unless the judge requires a high standard of all who practice before him, the best will be forced down to the level of the worst in order to compete on equal terms.
>
> In all these and other matters, each judge is a leader by virtue of disposition as *the* representative in *his* jurisdiction, of the judicial branch of government.

Arch M. Cantrall, *The Judge as a Leader: the Embodiment of the Ideal of Justice, in* HANDBOOK FOR JUDGES 57, 59 (American Judicature Society ed., 1961) (emphasis in original).

Perhaps because of this duty, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821); *see also Ex parte Robinson*, 86 U.S. 505, 510 (1873). Trial courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). Moreover, the court, may also exercise its inherent power to "vindicate its own interests" *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 701 (5th Cir. 2023), including maintaining the integrity and ethical standards that govern attorney conduct. *See In re: Deepwater Horizon*, 824 F.3d 571, 578 (5th Cir. 2016).

8

Rule 83.8(b)(1)–(4), and (6) provide as follows:

> "(b) Grounds for Disciplinary Action. A presiding judge, after giving opportunity to show case to the contrary, may take any appropriate disciplinary action against a member of the bar for:
>
> (1)   Conduct unbecoming a member of the bar;
> (2)   Failure to comply with any rule or order of this court;
> (3)   Unethical behavior;
> (4)   Inability to conduct litigation properly;
>
>    . . .
>
> (6)   Having been public or privately disciplined by any court, bar, court agency, or committee."

L.R. 83.8(b)(1)–(4), (6).

The Court further possesses authority to sanction attorneys based on obligations imposed by the en banc opinion of this court in *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc). For Northern District practitioners, *Dondi* is "not an obscure case"—it is a code that all licensed attorneys in the Northern District agree to abide by. *See Wissel v. Rural Media Group, Inc.*, No. 4:24-CV-00999-P, 2025 WL 2108002, at *2 (N.D. Tex. July 28, 2025). Standards adopted by *Dondi* that are relevant here include the following:

> (A) In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.
> (B) A lawyer owes, to the judiciary, candor, diligence and utmost respect.
>    . . .
> (D) A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

*Dondi*, 121 F.R.D. at 287–88.

"[A]ttorney discipline proceedings require proof only by clear and

9

convincing evidence." *Sealed Appellant I v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000). "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (cleaned up). On appeal, any order from the undersigned would be reviewed for abuse of discretion. *In re Finn*, 78 F.4th 153, 156 (5th Cir. 2023).

"As a general rule, 'the sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior.'" *In re Luttrell*, 749 F. App'x 281, 286 (5th Cir. 2018) (quoting *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002)). "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999) (citing ABA Standard for Imposing Lawyer Sanctions (ABA Standard) 3.0; *In re Quaid*, 646 So.2d 343, 350 (La. 1994) (citing ABA Standard 3.0)).

## ANALYSIS

The Motion presents three instances of sanctionable conduct by Sharpe. *First*, the Motion argues that by filing the Stay Motion in the Fifth Circuit rather than this Court, Sharpe violated the Panel's Sanctions Order by giving legal advice to the Behans through their company, Hermitage Newark, in the Northern District of Texas. *Second*, the Motion contends that by filing the Stay Motion, Sharpe took on new clients (Appellants)[7] in the Northern District of Texas without the Panel's permission, in violation of the Panel's Sanctions Order. And *third*, by representing the Appellants, Sharpe violated the Texas Disciplinary Rules of Professional Conduct because Appellants recently

---

[7] The Appellants names are Laura Davis, Whitney Martin, Annalisa Anderson, Christianson J. Anderson, and William Dale Behan.

10

brought suit against the Behans in state court regarding the same property. The Court will take each in turn.

## A. Practicing Law in the Northern District

Receiver argues that Sharpe gave legal advice to the Behans[8] for litigation in the Northern District by filing the Stay Motion. As stated above, the Panel's Sanctions Order against Sharpe stated, "[Sharpe] [s]hall not give legal advice to Dale or Linda Behan or their companies, including River North, their former companies, their associated companies, their affiliated companies, or any other entity that bears any meaningful relationship to the Behans in any matter in litigation in the Northern District of Texas." *In re Sharpe*, ECF No. 54 at 20.

This allegation requires analysis of Federal Rule of Appellate Procedure 8. Rule 8 states,"[a] party must ordinarily move first in the district court for the following relief: a stay of the judgment or order of a district court pending appeal . . . ." FED. R. APP. P. 8(a)(1)(A). Such a motion *may* be made in the court of appeals if "moving first would be impracticable." *Id.* 8(a)(2)(A)(i).

Sharpe's filing of the Stay Motion in the Fifth Circuit unavoidably required giving legal advice to the Behans in the Northern District. As stated in Rule 8(a), a Stay Motion of this Court's order must ordinarily be filed before this Court. An exception exists as found in 8(b). In Sharpe's Stay Motion attached to the Receiver's Motion, the reasoning for an exception is scantily addressed.[9] It is clear to the Court from both

---

[8]Sharpe's appeal and Stay Motion are not brought on behalf of the "Behans" as clients. However, as this Court has found (*See* ECF No. 438) and declarations drafted by Sharpe demonstrate (ECF No. 249), the entity Hermitage Newark is an "affiliated company" with the Behans and subject to the Panel's Sanctions Order. As such, the Court will use "Behans" and "Hermitage Newark" interchangeably for purposes of this opinion.

[9]In the only citation to a Fifth Circuit case, Sharpe cites to *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, for the proposition that a motion for stay can be filed in the appellate court if harm could begin the day after the district court issued its order. 734 F.3d 406, 411 (5th Cir. 2013). This argument is easily dismantled by an analysis of Sharpe's Stay Motion. To begin, the Stay Motion involves a piece of property that was *already* sold. In other words, there was no forthcoming harm, because the sale was

11

the Receiver's Motion and the testimony provided in the hearing that the real reason for Sharpe's filing in the appellate court is because Sharpe was banned from doing so in this Court. Even so, any advice on the ordinary route through the district court would *inevitably* require Sharpe to counsel the Behans and Appellants—at a minimum—on their rights concerning the enforcement of the *district court's order*.[10] And such advice would, necessarily, involve practicing law in the Northern District of Texas. If filing first in the appellate court was the "ordinary" route for filing a Stay Motion, the Court agrees that Sharpe would not be practicing in the Northern District, but such is not the case. Sharpe's Stay Motion categorically constitutes legal advice given to the Behans in violation of the Panel's Sanctions Order.

Sharpe's contentions to the contrary are unavailing and repeat already rejected arguments made before the Panel. Sharpe argues that "nothing in the Motion contends that Sharpe is prohibited from practicing in the Fifth Circuit." ECF No. 473 at 5. This is not the first time that Sharpe has been caught making this excuse. After the Panel denied Sharpe's motion to lift the temporary suspension assessed by the undersigned on December 18, 2024, this Court held a hearing relating to the distribution of property subject to the receivership on May 15, 2025. ECF No. 379. In preparation for that hearing, and because Sharpe was already temporarily suspended, the Behans filed a response to the Receiver's motion for hearing "*pro se.*" ECF No. 362.[11] At the hearing,

---

completed. Additionally, the Court's order on the Arkansas Property was issued on July 24, 2025. Sharpe's Stay Motion was not filed until August 8, 2025, more than two weeks after.

[10] According to Sharpe's testimony at the hearing, he did not "counsel" with the Appellants about filing the Stay Motion in the appellate court rather than the district court. Instead, he asserts that the Appellants merely relied on his professional judgment to make this decision and that he "recommended" that the motion be filed in the Fifth Circuit. *See* August 15, 2025, Hearing Transcript at 20 (hereinafter "Transcript"). The Court can discern no meaningful difference either way—Sharpe's decision to file first in the appellate court required his legal advice on how to handle a filing that should ordinarily be filed in the district court.

[11] The Court subsequently struck this response from the record because all purported interests the Behans asserted were vested in the Receiver at this

12

and upon the questioning of Dale Behan under oath, the Court learned that Dale Behan consulted Sharpe regarding the filing, meaning that the Behans had not prepared and filed the response *pro se*—Sharpe had assisted. ECF No. 377 at 53–58 ("And you said that this was typed up by Mr. Sharpe's legal assistant, and he gave you some input; is that correct? Yes, sir. That's correct."). Dale Behan also testified that he had visited Sharpe's office in preparation of the filing. *Id.* at 59 (explaining that he visited Sharpe's office to talk with Sharpe's paralegal Tanika regarding the filing). Sharpe admitted as much in response to the Panel's order that he provide an explanation of Mr. Behan's testimony before the Panel issued its Sanctions Order. *See In re Sharpe*, ECF No. 53-1 at 6 (admitting that he told Dale Behan of "some places to look for the response he was planning on filing"). But as he does here now with the Stay Motion, Sharpe argued to the Panel that "[t]his referral was solely related to my role as appellate counsel so it would be part of the appellate record if an appeal became appropriate." *Id.* In its Sanctions Order, issued two weeks after Sharpe's response, the Panel noted, "Sharpe has practiced law (again) in the Northern District of Texas since his suspension." ECF No. 54 at 22. And in response to Sharpe's description that he was solely acting as "appellate counsel," the Panel stated:

> Sharpe's view is incorrect. Developing the district court record when there might be a future appeal is practicing law in the district court. As such, Sharpe continued to practice in the Northern District of Texas while suspended. At this point, Sharpe has shown no regard for either Judge Pittman's orders or now the order of this Panel upholding his temporary suspension. The Panel warns Sharpe that if he continues to defy orders from this Panel and Judge Pittman, the Panel may disbar him from the Northern District of Texas or take other serious measures.

---

point. The Order striking the response was appealed and is one of the two remaining appeals at the Fifth Circuit—the other being the appeal in which Sharpe filed the Stay Motion.

Sharpe has been warned time and again that his actions to avoid this Court's judgments and orders may result in a serious penalty. Just as the Panel did, the Court rejects Sharpe's latest arguments that his maneuver can be chalked up to his role as appellate counsel for the Behans.

## B. New Clients

Next, Receiver argues for sanctions against Sharpe for violating the Panel's Sanctions Order that Sharpe not represent new clients in the Northern District without permission from the Panel. The Panel's Sanctions Order states, "[Sharpe] [s]hall not represent or take on any new client in the Northern District of Texas without the express, prior approval of this Panel. If Sharpe wishes to begin a new representation, he shall file a motion for leave with the Panel and the Panel will determine whether Sharpe is capable of the proposed representation." *In re Sharpe*, ECF No. 54 at 21.

For the same reasons listed above concerning Federal Rule of Appellate Procedure 8, the Court rejects the argument that Sharpe's representation of Appellants can merely be attributed to his role as appellate counsel. The Appellants, who Sharpe has never represented before, are the Behans' children or step-children. As Sharpe testified at the hearing, he had never represented any of the Appellants before the Stay Motion. *See* Transcript at 25. Sharpe also conceded he never made any request to the Panel to represent Appellants. *Id.* at 26. This constitutes a second violation of the Panel's Sanctions Order.

## C. Conflict of Representation

The third and final issue presented by Receiver's Motion is that Sharpe's representation of Appellants constitutes a conflict of interest. Texas Disciplinary Rule of Professional Conduct 1.06 says:

> (b) [A] lawyer shall not represent a person if the representation of that person:
>
> (1) involves a substantially related matter in which that person's interests are materially and directly adverse to

14

>the interests of another client of the lawyer or the lawyer's firm; or
>
>(2) reasonably appears to be or become adversely limited by the lawyers or the law firm's responsibilities to another client or to a third person or by the lawyers or law firm's own interests.

TEX. R. PROF. COND. 1.06(b)(1)–(2). A lawyer may engage in representation like the above if "the lawyer reasonably believes the representation of each client will not be materially affected" and "each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any." *Id.* 1.06(c)(1)–(2).

Before Sharpe filed the Stay Motion of this Court's order approving the sale of the Arkansas Property (on which the Court held multiple hearings), Appellants filed a lawsuit in state court in Independence County, Arkansas, against the Behans and Receiver over the sale of the Arkansas Property. *See* ECF No. 398-3. Thus, through the Stay Motion and appeal, Sharpe represents the same individuals suing his other clients, the Behans, in Arkansas state court.

Sharpe's response to this apparent conflict is that he was "not involved in [the Arkansas] litigation." ECF No. 473 at 5. But Rule 1.06 does not contemplate whether a lawyer was involved in the prior litigation, it simply asks whether representation of the new client, in this case the Appellants, involves interests that are materially adverse to another client, the Behans. A question the Court must answer in the affirmative. Accordingly, Sharpe's response does nothing to dispel the conflict in his representation of both Appellants and the Behans. Moreover, as Sharpe testified at the hearing, the only Appellant Sharpe actually spoke with prior to accepting representation is William Dale Behan, and there is no indication that this discussion included anything related to the apparent conflict. *See* Transcript at 14, 38. This is yet another ethical violation on Sharpe's part.

15

### D. Other Misrepresentations

While Sharpe was only ordered to show cause for the three violations listed above, the Court notes two other examples revealed at the hearing that demonstrate Sharpe's continued lack of candor: (1) Sharpe has acted contrary to his testimony and filings before the Panel; and (2) Sharpe was aware there was no emergency concerning his Stay Motion and proceeded, nonetheless.

As for the first, in a filing before the Panel on February 21, 2025, Sharpe represented, "Mr. Sharpe has made the difficult decision to never practice law again." *In re Sharpe*, ECF No. 36 at 35. Months later, just before the Panel issued its final sanctions, Sharpe was asked by the Panel about his plans to wind down his career. In fact, the representations made by Sharpe, including that he would "retire before the end of the year from the practice of law," were "important facts" for the Panel in assessing its sanctions against Sharpe. *See In re Sharpe*, ECF No. 54 at 22. At a hearing prior to the Sanctions Order, the Panel asked Sharpe, "Other than completing the appeals that are now pending in the Fifth Circuit, do you have any other plans to engage in any other litigation?" Sharpe responded, "No." Transcript at 43–44. At the show cause hearing for this Motion, the undersigned asked Sharpe whether he was truthful in his testimony before the Panel in May 2025 that he would not take on additional matters. *Id.* at 42–43. Sharpe answered "Yes." *Id.* at 43. Yet, as the Court pointed out, and is available as public record, Sharpe has taken on *multiple* new clients since the Panel's Sanctions Order, both in Texas district courts as well as Texas appellate courts. *Id.* at 45.[12] Sharpe's response to the undersigned was that this additional litigation is for "very close friends." *Id.* at 48. But Sharpe had no response for how these new cases comported with his representation to the Panel that he did not have *any* plans to take on additional litigation, nor why he chose not to disclose these additional matters to the Panel afterward. *Id.* at 49.

---

[12]Those cases include Moreno v. S2 Forest Ridge, LP, Case No. 17-364302-25; *Dombroski v. UNT Health Science Center, et al*, Case No. 67-364268-25; *Tanika Grover v. Tom Nail & Tanning*, Case No. 352-366879-25, with the latest being filed on July 22, 2025.

16

Additionally, in the same filing that Sharpe told the Panel he made the "difficult decision to never practice law again," and in an apparent attempt to deflect, he characterized the Behans as "nonpaying, very difficult clients." *In re Sharpe*, ECF No. 36 at 35. And three weeks earlier, in a different filing before the Panel, Sharpe argued, "there is perhaps an unintended conflation of Mr. Sharpe's advocate role with the *dodgy* conduct of his clients." *In re Sharpe*, ECF No. 32 at 1 (emphasis added). When asked about this statement at the show cause hearing, Sharpe stated, "That's [my attorney] Mr. Marshall's language; that is not my language." *See* Transcript at 39. Yet, Sharpe admitted to the undersigned that he "signed off" on his attorney's filings. *Id.* at 42. Such representations are wholly inconsistent with Sharpe's continuing, albeit improper, legal advice to the Behans here.[13]

As for the second, Sharpe's Stay Motion was filed on an emergency basis. Yet, as revealed by Receiver at the hearing, Sharpe received an email from Receiver on August 7, 2025, the day before the Stay Motion was filed, disclosing that the sale over the Arkansas Property had already been consummated. *See* ECF No. 479-9, Ex. 3. As a result, any motion for a stay would be moot. Despite acknowledging he had received the email providing notice of the consummated sale,[14] Sharpe filed the Stay Motion anyway and falsely categorized it as an emergency.

While these misrepresentations do not form the primary basis for the Court's sanctions today, they demonstrate a continuing pattern of dishonesty from Sharpe.

### E. Least Severe Sanction

This Court and its predecessors have been on guard against unethical behavior by attorneys for thirty-seven years. *See Wissel*, 2025

---

[13]*See Dondi*, 121 F.R.D. at 288 ("A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.").

[14]*See* Transcript at 29. Additionally, as Receiver pointed out, Sharpe made this filing knowing that Hermitage Newark and Appellant were millions of dollars out of the money, making it futile, and causing the Receiver additional expense. *See* Transcript at 34–35.

WL 2108002, at *1 (highlighting that *Dondi* provided "principles of litigation conduct that have governed attorneys in the district for the nearly forty years since . . . *Dondi*."). Nonetheless, the Court takes very seriously its duty to impose the "least restrictive sanction necessary to deter the inappropriate behavior." *In re Luttrell*, 749 F. App'x 281, 286 (5th Cir. 2018) (citations omitted).

Evidence of a pattern of misconduct is relevant to this Court's determination. In *In re Finn*, a disciplinary matter before a three-judge panel, including the undersigned, the Court noted that it had "previously tried a lesser sanction" against Finn. *In re Finn*, No. 3:22-MC-22-N, 2022 WL 20509131, at *2 (N.D. Tex. Oct. 25, 2022), *aff'd*, 78 F.4th 153 (5th Cir. 2023). And the Court further recognized that "Mr. Finn's pattern of misconduct has persisted over some time." *Id.* Taking these and other factors into consideration, the Court ordered that Mr. Finn be "indefinitely suspended from the practice of law before this Court" with the opportunity to "reapply" for admission after one year of suspension. *Id.* at *3.

Like *Finn*, the Court has tried lesser sanctions. The Court has, on separate occasions, fined Sharpe; held him in contempt; temporarily suspended his license to practice in the Northern District; ordered he withdraw from representing the Behans; and even ordered him to take the Multi state Professional Responsibility Exam (MPRE).[15] ECF Nos. 172, 291; *In re Sharpe*, ECF No. 17. The Court also opened a separate disciplinary matter and granted Sharpe's motion that a three-judge panel be appointed. *In re* Sharpe, ECF Nos. 17, 18. Yet even after additional sanctions from the Panel, and countless show cause hearings, Sharpe persists. As best the Court can tell, Sharpe is incapable of

---

[15]Texas adopted the MPRE requirement in 1992. According to Sharpe's bar page, he has been licensed since 1965, and therefore, the Court's order was likely the first time Sharpe took the exam. The Court first ordered Sharpe to take the March 2025 Exam, which he failed. *See* ECF Nos. 291, 365. The Court then ordered Sharpe to reapply for the exam on the next available date, which falls on August 21, 2025. ECF No. 370. This order remains outstanding, and notwithstanding the Court's order today, it expects a report from Sharpe on his MPRE examination scheduled for August 21, 2025.

honesty. And as the undersigned expressed in one show cause hearing, "the Court is exasperated."

Sharpe's conduct has wasted untold hours of time and expense for Plaintiff, the Court, the Behans' seemingly endless creditors, and now the Receiver. As the undersigned's predecessor stated in another case involving an indefinite suspension: "If this court were to order less than removal of [practitioner's] right to practice law before this court . . . the expectations of *Dondi* would be sorely disappointed." *In re Discipline of Ray*, No. 4:19-MC-015-A, 2019 WL 3082523 (N.D. Tex. July 15, 2019), *aff'd sub nom. In re Ray*, 951 F.3d 650 (5th Cir. 2020). As in *Ray*, the Court makes a "fair inference" of Sharpe's "repeated violations of his ethical and moral obligations over a period of years . . . that he intentionally did what he did, knowing that it was wrong." *Id.*

Regrettably, the Court concludes Sharpe must endure the same fate as ordered in *Ray* and *Finn*. Based on the clear and convincing evidence of the violations presented in Receiver's Motion and combined with the pattern of misconduct exhibited by Sharpe, it is **ORDERED** that Sharpe be indefinitely suspended from the practice of law before this Court. It is further **ORDERED** that Sharpe may reapply to resume his practice before this Court after **two years** of suspension.

The Court also finds that Sharpe must pay the costs and fees expended by Receiver in defending the Stay Motion and in pursuit of this Motion. As outlined by Receiver at the hearing, Sharpe is **ORDERED** to pay **$12,000 on or before August 25, 2025**.

## CONCLUSION

For the reasons discussed above, Sharpe is indefinitely suspended from the practice of law in the Northern District of Texas. Sharpe may reapply to be admitted for practice after **two years**. The Court **DIRECTS** the Clerk of Court to remove Sharpe's name from the list of attorneys authorized to practice before this Court. If Sharpe is to seek readmission, he must attach a copy of this Opinion & Order to his application.

Sharpe is also **ORDERED** to pay the costs and fees to Receiver

associated with defending against Sharpe's Stay Motion and pursuing this Motion into the registry of the Court to be disbursed to Receiver in the amount of **$12,000**. Sharpe is **ORDERED** pay this amount **on or before August 25, 2025**, and file notice with the Court confirming such payment.

Lastly, the Court **DIRECTS** the Clerk of Court to file this Opinion & Order in Case No. 4:24-mc-00007-X before the Panel, and Case No. 24-10905 before the United States Court of Appeals for the Fifth Circuit. The Court also **DIRECTS** the Clerk of Court to file (1) this Opinion & Order, (2) the Panel's Sanctions Order,[16] and (3) the Panel's order denying Sharpe's motion for reconsideration of the Panel's Sanctions Order[17] with the following courts and bars to consider whether reciprocal discipline is appropriate against Sharpe:

- Shauna Willing, Chief Disciplinary Counsel of the Texas State Bar;
- the Clerk of Court for the Eastern and Southern Districts of Texas;
- the Clerk of Court for the Western and Eastern Districts of Arkansas;
- the Chief Judge of the Court of Appeals for the Fifth, Sixth, Tenth, and Federal Circuits; and
- the Chief Justice of the United States Supreme Court.

**SO ORDERED** on this **18th day of August 2025.**

*[signature: Mark T. Pittman]*

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

---

[16]This can be found at ECF No. 54 in Case No. 4:24-mc-00007-X.

[17]This can be found at ECF No. 61 in Case No. 4:24-mc-00007-X.